UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                               :

ROY DEN HOLLANDER, SEAN MOFFETT,     :
BRUCE CARDOZO, DAVID BRANNON,     :
                                               :

               Plaintiffs,        :

                                               :

     - against -              :     08 Civ. 1521 (WHP)
                                               :     ECF Case

                                             :

Secretary MICHAEL CHERTOFF, U.S.     :
Department of Homeland Security; Director   :
EMILIO GONZALEZ, U.S. Citizenship and   :
Immigration Services (formerly Immigration and :
Naturalization Service); U.S. Attorney General  :
MICHAEL MUKASEY; Director KEVIN     :
OHLSON, Executive Office of Immigration   :
Review, U.S. Department of Justice,      :
                                             :

             Defendants.      :
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AMENDED MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

                                    MICHAEL J. GARCIA
                                    United States Attorney for the
                                    Southern District of New York
                                    Attorney for Defendants
                                    86 Chambers Street, 3d Floor
                                    New York, NY 10007
                                    Tel.: (212) 637-2769
                                    Fax: (212) 637-2786
                                    Email: Natalia.Oeltjen@usdoj.gov

NATASHA OELTJEN
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ......................................................................................................................2

    A.    The VAWA Statutory Scheme.................................................................................2

        1.    VAWA Applications...............................................................................2

        2.    VAWA Confidentiality Provisions ...........................................................5

    B.    Plaintiffs' Factual Allegations ...............................................................................6

        1.    Roy Den Hollander ................................................................................6

        2.    Sean Moffett..........................................................................................8

        3.    Bruce Cardozo ......................................................................................8

        4.    David Brannon .....................................................................................9

    C.    Constitutional Violations Asserted .........................................................................9

        1.    Due Process..........................................................................................10

        2.    First Amendment Protections ................................................................11

        3.    Equal Protection ...................................................................................11

    D.    Relief Sought .......................................................................................................12

ARGUMENT .........................................................................................................................13

POINT I.  THE COMPLAINT SHOULD BE
DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION ...........................13

    A.    Standards Governing Motions to Dismiss Under Rule 12(b)(1) ...........................13

    B.    The Complaint Should Be Dismissed for Lack of Subject Matter
Jurisdiction Because None of the Named Plaintiffs Can Establish Standing ........14

        1.    The Doctrine of Standing and Injury .....................................................14

        2.    Plaintiffs Have Not Demonstrated Any Injury-in-Fact............................16

i

3.      Any Alleged Injury Is Not Traceable to Any Conduct by
            Defendants ................................................................................................19

POINT II.  THE COMPLAINT SHOULD BE
        DISMISSED FOR FAILURE TO STATE A CLAIM ......................................................20

    A.      Standards Governing Motions to Dismiss Under Rule 12(b)(6) ..........................20

    B.      Plaintiffs Fail to State Any Viable Claim for Relief...............................................22

CONCLUSION.....................................................................................................................24

## TABLE OF AUTHORITIES

**Cases***:*                                                                                                    **Page**

Able v. United States, 155 F.3d 628 (2d Cir. 1998) ................................................23

Baker v. Carr, 369 U.S. 186 (1962) .......................................................................16

Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955 (2007)...................21, 23

Bell v. Hood, 327 U.S. 678 (1946) .........................................................................14

Board of Regents v. Roth, 408 U.S. 564 (1972) .....................................................22

Bolling v. Sharpe, 347 U.S. 497 (1954).................................................................12

City of Los Angeles v. Lyons, 461 U.S. 95 (1983) .........................................15, 16, 19

Deshawn E. v. Safir, 156 F.3d 340 (2d Cir. 1998) ..................................................16

Doe v. Blum, 729 F.2d 186 (2d Cir. 1984) ..............................................................19

Flast v. Cohen, 392 U.S. 83 (1968)........................................................................14

Frazier v. Coughlin, 850 F.2d 129 (2d Cir. 1988) ...............................................21, 22

Gladstone Realtors v. Village of Bellwood, 441 U.S. 91 (1979)................................15

Golden v. Zwickler, 394 U.S. 103 (1969)................................................................16

Goldfine v. Sichenzia, 118 F. Supp. 2d 392 (S.D.N.Y. 2000).....................................22

Hernandez v. Ashcroft, 345 F.3d 824 (9th Cir. 2003) ..................................................4

Hollander v. Flash Dancers Topless Club, 340 F. Supp. 2d 453 (S.D.N.Y. 2004),
   aff'd, 2006 WL 267148 (2d Cir. Feb. 3, 2006) ...................................................7

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007) ...........................................................21

Jankowski-Burczyk v. INS, 291 F.3d 172 (2d Cir. 2002) ...........................................23

L'Europeenne de Banque v. La Republica de Venezuela,
   700 F. Supp. 114 (S.D.N.Y. 1988) ..................................................................22

Laird v. Tatum, 408 U.S. 1 (1972).............................................................................................18

Levin v. Harleston, 966 F.2d 85 (2d Cir. 1992)........................................................................16

Levine v. Morgenthau, No. 95-cv-8529 (PKL), 1996 WL 396119
    (S.D.N.Y. July 16, 1996) ..................................................................................................22

Luckett v. Bure, 290 F.3d 493 (2d Cir. 2002).............................................................................15

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ........................................................15, 16, 17

Makarova v. United States, 201 F.3d 110 (2d Cir. 2000).............................................................14

Malik v. Meissner, 82 F.3d 560 (2d Cir. 1996) ..........................................................................14

Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379 (1884) ........................................................14

Md. Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270 (1941)...............................................16

National Council of La Raza v. Gonzales, 468 F. Supp. 2d 429 (E.D.N.Y. 2007) .......................18

New Alliance Party v. FBI, 858 F. Supp. 425 (S.D.N.Y. 1994).............................................19, 20

O'Shea v. Littleton, 414 U.S. 488 (1974).................................................................................19

Paul v. Davis, 424 U.S. 693 (1976) .........................................................................................22

Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117 (2d Cir. 2007) .................21

Rattner v. Netburn, 930 F.2d 204 (2d Cir. 1991)........................................................................22

Rizzo v. Goode, 423 U.S. 362 (1976)..................................................................................16, 17

Saleh v. Gonzales, 495 F.3d 17 (2d Cir. 2007)............................................................................4

Shain v. Ellison, 356 F.3d 211 (2d Cir. 2004) ......................................................................15, 16

Simmonds v. INS, 326 F.3d 351 (2d Cir. 2003) .........................................................................18

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998)........................................................14

United States v. Richardson, 418 U.S. 166 (1974) .....................................................................14

United States v. SCRAP, 412 U.S. 669 (1973)...........................................................................15

iv

Valley Forge Christian College v. Americans United for Separation of Church and State,
    454 U.S. 464 (1982).........................................................................................................14, 17

Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994)..................................................................19, 22

Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992).........................................................21

Warth v. Seldin, 422 U.S. 490 (1975)..............................................................................14, 15, 19

Whitmore v. Arkansas, 495 U.S. 149 (1990).........................................................................15, 20

## Federal Statutes:

8 U.S.C. § 1154(a)(1)...............................................................................................................3, 10

8 U.S.C. §§ 1154(a)(1)(J) ..............................................................................................4, 5, 10, 12

8 U.S.C. § 1229b............................................................................................................................4

8 U.S.C. § 1229b(b)(1) ..................................................................................................................4

8 U.S.C. § 1229b(b)(2) ............................................................................................................4, 10

8 U.S.C. § 1229b(b)(2)(D)............................................................................................4, 5, 10, 12

8 U.S.C. § 1254(a) .........................................................................................................................4

8 U.S.C. § 1361..............................................................................................................................5

8 U.S.C. § 1367........................................................................................................................5, 8, 12

8 U.S.C. § 1367(a)(1).................................................................................................................6, 12

8 U.S.C. § 1367(a)(1)(A) .............................................................................................................10

8 U.S.C. § 1367(a)(2).........................................................................................................6, 11, 17

8 U.S.C. § 1367(b) .......................................................................................................................18

8 U.S.C. § 1367(b)(2) ...............................................................................................................6, 18

8 U.S.C. § 1367(b)(4) ...............................................................................................................6, 18

8 U.S.C. § 1367(b)(5) ...............................................................................................................6, 18

8 U.S.C. § 1367(b)(7) ......................................................................................6, 18

Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"),
     Pub. L. No. 104-208, § 304(a)(3), 110 Stat. at 3009-596-606 (1996) ...............................4

Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No.106-386,
     Div. B, Title V § 1513(d) (2000) ...........................................................5

Violence Against Women and Department of Justice Reauthorization Act of 2005,
     Pub. L. No. 109-162, Title VIII, Subtitle B § 817 (2006) ...................................5

Violent Crime Control and Law Enforcement Act, Pub. L. No. 103-322,
     108 Stat. 1796 (1994)...................................................................3

**Federal Regulations:**

8 C.F.R. § 204.2(c)(1)(i) ...................................................................3

8 C.F.R. § 204.2(c)(1)(vi) .................................................................11

8 C.F.R. § 204.2(c)(3)(i) ...................................................................3

8 C.F.R. § 204.2(c)(3)(ii) ..................................................................3

8 C.F.R. § 240.70(c).......................................................................4

**Congressional and Administrative Materials:**

151 Cong. Rec. E2605, E2607.............................................................5

H.R. Rep. No. 103-395 (1993)............................................................3

61 Fed. Reg. 13061 (Mar. 26, 1996).....................................................3

**Miscellaneous:**

Erwin Chemerinsky, Federal Jurisdiction § 2.3.2 (1989) ................................15

Martha Davis & Janet Calvo, INS Interim Rule Diminishes Protection for Abused
     Spouses and Children, 68 Interpreter Releases 665, 668-69 (1991)....................5

**Preliminary Statement**

Defendants Michael Chertoff, Secretary of the United States Department of Homeland Security ("DHS"), Emilio Gonzales, director of the United States Citizenship and Immigration Services ("USCIS"), Michael Mukasey, Attorney General of the United States, and Kevin Ohlson, Director of the Executive Office for Immigration Review ("EOIR") (collectively, "Defendants," or "Government"), by their attorney Michael J. Garcia, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion to dismiss the complaint of plaintiffs Roy Den Hollander ("Hollander"), Sean Moffett ("Moffett"), Bruce Cardozo ("Cardozo"), and David Brannon ("Brannon") (collectively, "Plaintiffs").  Defendants seek dismissal of the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, respectively.

Plaintiffs are four individuals who purport to represent a class of U.S. citizen males whose marriages to alien wives ended in divorce, and who now seek to have several immigration-related provisions of the Violence Against Women Act ("VAWA") declared unconstitutional.  Specifically, plaintiffs object to those provisions which (1) allow non-citizens whose U.S. citizen spouses have subjected them to domestic violence to legalize their immigration status without the abusive spouse's participation; and (2) forbid the disclosure of such aliens' immigration records to their U.S. citizen spouses.  Plaintiffs essentially argue that the VAWA statutory scheme creates an incentive for aliens to falsely claim abuse, and thus creates a risk of damaging their U.S. citizen spouses' reputations – thereby depriving them of due process, equal protection, and a number of First Amendment rights.  In addition to their request for declaratory relief, plaintiffs make a number of demands for injunctive relief, ranging

-1-

from the personal – to prevent the future application of these provisions in their own ex-wives' immigration proceedings – to the more sweeping – to compel CIS to institute new procedures and to reorganize its adjudication process).

Plaintiffs launch a barrage of dramatic and convoluted grievances regarding the motivation, operation, and effects of the VAWA.  However, this Court need not labor to unravel their myriad contentions, because at bottom, plaintiffs have not established a case or controversy to justify judicial intervention.  None of them can confirm that his ex-wife filed any application pursuant to VAWA, much less articulate any concrete harm he experienced as a result.  Rather, their entire complaint rests on speculation about the horrors that may befall them should any record of their ex-wives' VAWA proceedings be released to the public, and they point to no basis for believing any such release is imminent.  Accordingly, notwithstanding plaintiffs' indignation at the VAWA statutory scheme, any pronouncement from this Court regarding its constitutionality would amount to no more than an advisory opinion.  Because plaintiffs lack standing, they fail to establish subject matter jurisdiction.  Moreover, even if the Court were to overlook this fatal flaw, plaintiffs have not articulated a deprivation of any right or liberty interest, and thus fail to state a claim on which relief can be granted.  Accordingly, the complaint should be dismissed.

**Background**

A.  **The Statutory Provisions at Issue**

   **1. VAWA Applications**

The term VAWA refers to a series of statutes, first enacted in 1994, which encompassed a number of amendments to the Immigration and Nationality Act ("INA").  One of the goals of this legislation was to relieve aliens whose U.S. citizen spouses were abusing them from

depending on that spouse to obtain legal immigration status.  <u>See</u> Violent Crime Control and Law Enforcement Act, Pub. L. No. 103-322, 108 Stat. 1796 (1994) ("VAWA 1994"). Previously, an alien seeking lawful permanent resident ("LPR," or "green card") status based on her marriage to a U.S. citizen or LPR was entirely dependent on her husband to file an immigrant visa petition on her behalf.[1]  <u>See</u> 8 U.S.C. § 1154(a)(1) (1993) (repealed).  Congress was concerned that such women were often pressured into remaining in abusive marriages, in light of the threat that their husbands would withdraw the visa petitions if they left, thereby putting them at risk of deportation.  <u>See</u> 61 Fed. Reg. 13061, 13061-62 (Mar. 26, 1996) (noting that "some abusive citizens . . . misuse their control over the petitioning process . . . . to perpetuate domestic abuse").  Through VAWA 1994, this statute was amended to allow such an alien to "self-petition" for immigrant classification; to prevail, she was required to demonstrate that she was married to a U.S. citizen or LPR, was eligible for immigrant classification based on that relationship, was residing in the United States and had, at some point, lived there together with the spouse, entered into the marriage in good faith, was a person of good moral character, would experience "extreme hardship" if deported, and, during the marriage, either she or her child "was battered or subjected to extreme cruelty perpetuated by the alien's spouse."  <u>See</u> H.R. Rep. No. 103-395 (1993), at 23-24; <u>see also</u> 8 U.S.C. § 1154(a)(1); 8 C.F.R.§ 204.2(c)(1)(i).  If the petition is granted, the alien can apply to adjust her status to that of an LPR; if it is denied, she can file an administrative appeal.  8 C.F.R. § 204.2(c)(3)(i)-(ii).

VAWA 1994 also provided a remedy for battered spouses who had already been placed

---

[1] The statutes are gender-neutral on their face, and apply equally to both males and female victims of domestic violence.  <u>See</u> 61 Fed. Reg. 13061, 13062 (noting that, "[a]lthough the title of the [VAWA] reflects the fact that many abuse victims are women, abused spouses and children of <u>either sex</u> may benefit from these provisions") (emphasis added).  This section refers to applicants using female pronouns simply for purposes of convenience.

in deportation proceedings, by relaxing the requirements for the form of relief known as "suspension of deportation."  See VAWA 1994 § 40703(a) (codified at 8 U.S.C. § 1254(a)) (repealed 1996); Hernandez v. Ashcroft, 345 F.3d 824, 832 (9th Cir. 2003).  This form of relief was repealed altogether in 1996, and replaced with an application now known as "cancellation of removal."  See Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, § 304(a)(3), 110 Stat. at 3009-596-606 (1996) (amending the INA to add, inter alia, section 240A, now codified at 8 U.S.C. § 1229b).  Normally, a nonpermanent resident seeking cancellation must demonstrate, inter alia, that she has been physically present in the United States for ten years, and that her removal would result in "exceptional and extremely unusual hardship" to a U.S. citizen or LPR relative. 8 U.S.C. § 1229b(b)(1).  If the alien can demonstrate that she was "battered or subjected to extreme cruelty" by a U.S. citizen spouse or parent, she need only show three years of physical presence, and that she personally would suffer "extreme hardship."  8 U.S.C. § 1229b(b)(2).  If she prevails in her application, then her status is adjusted to that of an LPR.  8 C.F.R § 240.70(c).  If her initial application is unsuccessful, she can appeal to the Board of Immigration Appeals and then to a Court of Appeals; if she is ultimately unsuccessful, she is subject to a removal order.  See Hernandez, 345 F.3d at 831-32.

In both visa applications before USCIS and cancellation of removal proceedings before the Bureau of Immigration and Customs Enforcement ("ICE"),[2] the adjudicator shall consider "any credible evidence" that the alien submits.  See 8 U.S.C. §§ 1154(a)(1)(J), 1229b(b)(2)(D).  The determination of what evidence is credible and the weight to be given to that evidence shall be within the adjudicator's sole discretion. 8 U.S.C. §§ 1154(a)(1)(J), 1229b(b)(2)(D).  This

2 The former INS ceased to exist of March 1, 2003, and was reconstituted into two agencies within DHS: USCIS, which handles applications for benefits, and ICE, which controls removal proceedings.  See Saleh v. Gonzales, 495 F.3d 17, 20 n.3 (2d Cir. 2007).

standard was established in response to concerns that the stricter standard suggested in an interim regulation imposed an unrealistic burden on aliens subjected to extreme coercion and abuse. See Martha Davis & Janet Calvo, INS Interim Rule Diminishes Protection for Abused Spouses and Children, 68 Interpreter Releases 665, 668-69 (1991). The burden of proving eligibility for the benefit sought remains entirely with the alien. See 8 U.S.C. § 1361.

### 2.  VAWA Confidentiality Provisions

VAWA 1994 also introduced certain confidentiality protections for domestic violence victims. See id. § 40508. In 1996, Congress enacted a more extensive scheme prohibiting the release of information relating to a battered spouse's immigration case. See IIRIRA § 384 (codified at 8 U.S.C. § 1367). Congress further expanded upon these protections in the 2000 and 2005 VAWA reauthorization acts. See Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No.106-386, Div B, Title V, § 1513(d) (2000); Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, Title VIII, Subtitle B, § 817 (2006). One of Congress' primary goals was to prohibit the disclosure of VAWA immigration application materials to accused batterers, in order to ensure the effectiveness of the application procedures. See 151 Cong. Rec. E2605, E2607 (daily ed. Dec. 18, 2005) (statement of Rep. Conyers) (stating that the confidentiality provisions "are designed to ensure that abusers and criminals cannot use the immigration system against their victims. Examples include abusers using DHS to obtain information about their victims, including the existence of a VAWA immigration petition, interfering with or undermining their victims' immigration cases, and encouraging immigration enforcement offices to pursue removal actions against their victims").

These confidentiality provisions, which are triggered when an immigrant files a VAWA application with either USCIS or ICE, prevent the Attorney General or any federal agency from

(1) making an "adverse determination of admissibility or deportability of an alien . . . using information furnished solely by . . . a spouse or parent who has batter the alien or subjected the alien to extreme cruelty," or (2) permitting "use by or disclosure to anyone (other than a sworn officer or employee of the Department, or bureau or agency thereof, for legitimate Department, bureau, or agency purposes) of any information which pertains to an alien who is the beneficiary" of a VAWA application. 8 U.S.C. § 1367(a)(1), (2).  The statute provides  several limited exceptions under which such information can be disclosed; at issue here are the provisions under which:

- The Attorney General may "provide for the disclosure of information to law enforcement officers to be used solely for a legitimate law enforcement purpose," id. § 1367(b)(2);

- Information may be disclosed "if all the battered individuals in the case are adults and they have all waived the restrictions of such subsection," id. § 1367(b)(4);

- The Attorney General may disclose information "to Federal, State, and local public and private agencies providing benefits, to be used solely in making determinations of eligibility for benefits," id. § 1367(b)(5); and

- "Government entities adjudicating applications . . . may, with the prior written consent of the alien involved, communicate with nonprofit, nongovernmental victims' service providers for the sole purpose of assisting victims in obtaining victim services from programs with expertise working with immigrant victims," id. § 1367(b)(7).

## B. Plaintiffs' Factual Allegations

Each named plaintiff asserts that he suffered a number of wrongs as a result of his marriage to an alien wife, which he contends – "upon information and belief" – are attributable to the VAWA.

### 1. Roy Den Hollander

This case originated with a pro se complaint filed by Hollander alone – now the lead plaintiff and attorney for the proposed class.  See 08-civ-1521 (WHP), Complaint, filed Feb. 14,

2008. His amended complaint, naming new plaintiffs and defendants, and adding additional factual allegations and requests for relief, followed the Government's letter indicating that it planned to move to dismiss. See Government's Letter dated Apr. 14, 2008; Amended Complaint ("Cmplt"), dated May 2, 2008. Hollander's experience, which purportedly gave rise to this action, is as follows:[3] In March 2000, while he was working in Russia, Hollander married Alina Shipilina ("Shipilina"), a Russian citizen. Cmplt ¶¶ 56-57. In July 2000, Shipilina allegedly accompanied Hollander to the United States, traveling on a nonimmigrant visa. Cmplt ¶¶ 58-59. The marriage quickly deteriorated, and around October 2000, Hollander began seeking a divorce. Cmplt ¶¶ 64-66. When Hollander refused to sponsor her for an immigrant visa petition, Shipilina, "on information and belief," undertook to "fabricate an alternative means to permanent residency using the VAWA abused wife route." Cmplt ¶ 67. To this end, she allegedly filed a complaint with the 114th Police Precinct in Queens "falsely" accusing Hollander of extortion and threats, Cmplt ¶ 67; and obtained a temporary protection order from the Queens Family Court, which was later dismissed for failure to prosecute, id. ¶ 69.

Hollander claims that he "provided evidence to the USCIS office at the U.S. Embassy in Moscow on some of Ms. Shipilina's violations of the . . . INA," in an apparent attempt to have deportation proceedings initiated. Cmplt ¶ 73. He states, "on information and belief," that Shipilina was placed in deportation proceedings, Cmplt ¶ 78, and that he provided DHS with extensive evidence of her criminal and immigration violations, id. ¶¶ 73, 76, 77. However, he

---

[3] Hollander's allegations regarding Shipilina were also the subject of a prior lawsuit, in which he alleged that Shipilina, her divorce lawyers, various exotic dancing clubs, members of organized crime groups, and a New York City police detective were involved in a criminal conspiracy, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). See Hollander v. Flash Dancers Topless Club, 340 F. Supp. 2d 453, 455-57 & n.3 (S.D.N.Y. 2004) (PKC), aff'd, 2006 WL 267148 (2d Cir. Feb. 3, 2006). His complaint was dismissed for failure to state a claim, because he "failed to adequately allege causation and injury." Id. at 462.

concludes, "on information and belief," that the deportation proceedings must have concluded in Shipilina's favor. Cmplt ¶¶ 83-84. The basis for this inference is that in 2007, Hollander allegedly "came across a N.Y. Post article on the Internet . . . about Ms. Shipilina working at the Hawaiian Tropic Zone restaurant in Times Square," Cmplt ¶ 83, and thus concluded that in order for her to be "legally working at the restaurant, she must have used or is using the VAWA process to acquire legal permanent residency," id. ¶ 84.[4] He further infers that, in order for Shipilina to have prevailed, DHS must have credited whatever evidence and testimony she presented, and ignored the evidence he submitted himself. Cmplt ¶¶ 79-82.

2. Sean Moffett

The second named plaintiff, Moffett, allegedly married a Guatemalan citizen in 2006. Cmplt ¶¶ 87-88. In May 2007, his wife allegedly "falsely accused him of assault, had him arrested, and with the aid of the courts forced him out of the house he paid for." Cmplt ¶ 89. She allegedly "looted [Moffett's] bank account" while he spent three days in jail, and later obtained a one-year order of protection. Cmplt ¶¶ 90-91. The couple divorced in April 2008, and "child support was awarded to the wife for care of their son." Cmplt ¶ 94. "On information and belief," Moffett's ex-wife "is currently pursuing permanent residency through the VAWA process," Cmplt ¶ 95, with the assistance of a "feminist advocacy and legal aide group," id. ¶ 93.

3. Bruce Cardozo

The third named plaintiff, Cardozo, allegedly met his wife in Ukraine and married her in 2001. Cmplt ¶¶ 98, 101, 102. Accordingly to the complaint, his wife once had him arrested, and later obtained a temporary order of protection, based on false allegations of abuse. Cmplt ¶¶

---

[4] Consistent with 8 U.S.C. § 1367, DHS can neither confirm nor deny that Shipilina – or any of the other plaintiffs' unnamed ex-wives – filed any application for relief pursuant to VAWA.

104, 105.  Subsequently, she allegedly obtained a permanent order of protection, which she twice "falsely accused him of violating," and which lasted until the couple divorced "four years later." Cmplt ¶¶ 107, 109.  Cardozo claims that he was "unable to change jobs" during this four-year period, because "[c]orporations usually check whether applicants have restraining orders filed against them, and if so, usually deny the applicant a job, which is what happened to Mr. Cardozo."  Cmplt ¶ 108.  He also claims that his ex-wife later "used VAWA to acquire permanent residency."  Cmplt ¶ 110.  Finally, he claims that his "cost in legal fees alone" from these various matters relating to his ex-wife is "over 40,000."  Cmplt ¶ 111.

    4.  <u>David Brannon</u>

The fourth named plaintiff, Brannon, alleges that he sponsored a Russian citizen for a fiancee visa, and that in August 2006, after they married, she received a "temporary green card." Cmplt ¶¶ 115-117.  By April 2007, the marriage allegedly "wasn't working," and Brannon "offered" his wife a divorce.  Cmplt ¶ 119.  The next day, he was allegedly "served with an order of protection in which his alien wife falsely accused him of mental and physical abuse and threatening to kill her."  Cmplt ¶ 120.  He was then allegedly "ordered out of the house that he had bought with his own money" and rendered "homeless for nine days at a cost of $500," Cmplt ¶ 120; the temporary order was subsequently dismissed, <u>id.</u> ¶ 121.  The complaint alleges that divorce proceedings are now pending and that Brannon's "financial costs," to date, are "currently at $22,000 and increasing." Cmplt ¶ 123.  "On information and belief," Brannon's wife "has or will shortly pursue permanent residency through [the] VAWA process."  Cmplt ¶ 125.

**C.  <u>Constitutional Violations Asserted</u>**

Plaintiffs make a number of convoluted, and often redundant, claims casting these experiences as constitutional violations wrought by the VAWA.  <u>See</u> Cmplt ¶¶ 140-218.

-9-

### 1. Due Process

First, plaintiffs contend that the VAWA provisions present an undue risk of harm to their reputations, infringing upon procedural due process under the Fifth Amendment. They contend that VAWA proceedings – namely, VAWA self-petitioning under 8 U.S.C. § 1154(a)(1) and cancellation of removal under 8 U.S.C. § 1229b(b)(2) – are fundamentally unfair because the adjudicators rely on the nebulous "any credible evidence" standard, see 8 U.S.C. §§ 1154(a)(1)(J), 1229b(b)(2)(D). See Cmplt ¶ 179 (government relies exclusively on "incompetent evidence" submitted by the wife, such as personal affidavits, "unproven police complaints," and "temporary orders of protection issued in ex parte proceedings"). Moreover, they contend that 8 U.S.C. § 1367(a)(1)(A), by precluding an adverse determination on a VAWA application based solely on information from the applicant's husband, effectively prevents them from submitting any "exculpatory" evidence. Cmplt ¶¶ 162-63. In short, they claim, the proceedings deny U.S. citizen spouses any opportunity to "refute accusations of 'battery,' 'extreme cruelty,' or 'overall pattern of violence,'" or to "prevent administrative decisions that find them guilty" of same, Cmplt ¶ 142, and thus to protect their "reputations, honor and integrity," id. ¶ 148.

Plaintiffs also contend that these statutes violate a number substantive due process rights. See, e.g., Cmplt ¶ 146 ("The statutory secrecy . . . abridges class members' rights to freedom of choice in marital decision by presenting them with a Faustian choice of acceding to the criminal demands of an alien wife to sponsor her for permanent residency or a Star Chamber proceeding by which the defendants find a class member guilty"); id. ¶ 147 (defendants "invade the privacy interests of class members in matters such as marriage, procreation, contraception, family relationships, and child rearing").[5]

### 2.     First Amendment Protections

Second, plaintiffs contend that these same considerations implicate the First Amendment concerns.  See, e.g., Cmplt ¶ 143 (confidentiality requirement in 8 U.S.C. § 1367(a)(2) "infringe[s] class members' First Amendment rights to speak by denying them any opportunity to be heard on their own behalves [sic] in order to counter accusations and prevent findings of 'battery'" or abuse).  Further, they contend that the terms used in 8 C.F.R. § 204.2(c)(1)(vi) – battery, extreme cruelty, overall pattern of violence – are "void for vagueness and overbreadth," Cmplt ¶¶ 188-204, in that they "fail to provide a reasonable criteria by which any American man could conform his conduct in order to escape the application of the statutes to him if he chose to exercise his right to bring a foreign wife home," id. ¶ 213.  Accordingly, plaintiffs claim that the VAWA statutes and regulations "chill a class member's freedom of speech."  Cmplt ¶ 197.

### 3.     Equal Protection

Third, plaintiffs contend that the VAWA provisions deny them equal protection under the

---

[5] Plaintiffs further contend that the VAWA statutes amount to "bills of attainder," designed to punish "American men who look overseas for wives," Cmplt ¶ 205, and "punish all American men by effectively limiting their freedom of choice to wives in America because marriage to and divorce from an alien wife makes any citizen man vulnerable to false allegations of [abuse] without any legal recourse to disprove those allegations," id. ¶ 206.

Fifth Amendment,[6] based on both national origin and gender. Plaintiffs claim that "on their face," the secrecy provisions of 8 U.S.C. § 1367 "invidiously discriminate" against U.S. citizens, "because the secrecy of the proceedings apply [sic] only to U.S. citizens, but not to their alien wives." Cmplt ¶¶ 158-159. They further claim that the "any credible evidence" standard of 8 U.S.C. §§ 1154(a)(1)(J) and 1229b(b)(2)(D), together with 8 U.S.C. §1367(a)(1)'s prohibition on finding an VAWA applicant deportable based solely on information furnished by her spouse, reflect national origin discrimination "by giving an alien's word credibility while discounting the believability of a U.S. citizen's statement." Cmplt ¶ 169.

Moreover, while conceding that the VAWA provisions are facially gender-neutral, plaintiffs contend that they violate equal protection as applied. <u>See</u> Cmplt ¶ 160 (proceedings "were intended and are overwhelmingly used by alien wives against citizen husbands"); ¶ 161 ("if VAWA were evoked against an American wife, it would likely fail because of the favoritism given females by the VAWA Unit at the USCIS Vermont Service Center").

**D. <u>Relief Sought</u>**

In their prayer for relief, plaintiffs seek a declaration that these various VAWA provisions are unconstitutional. Cmplt ¶ 219(a). They also demand the following injunctions:

(1) "to put a halt to the application of these statutes and regulations in VAWA proceedings that are currently under way," Cmplt ¶ 219(b);

(2) "to prevent the future application of these statutes and regulations to future and current class members" – <u>if</u> any of them "once again marr[ies] a foreign female," <u>id.</u> ¶ 219(c);

(3) granting them access to their ex-wives' immigration records, <u>id.</u> ¶ 219(e);

---

6 The Due Process Clause of the Fifth Amendment has been read to include the equal protection guarantee that is explicitly included in the Fourteenth Amendment. <u>See</u> <u>Bolling v. Sharpe</u>, 347 U.S. 497, 499 (1954).

(4) granting each member an opportunity to "contest the findings and decisions that hold him responsible for 'battery,'" a "neutral decision maker," and a "right to appeal in the same fashion . . . [as] his alien wife," id. ¶ 219(f);

(5) requiring the "institution of procedures that allow a class member to prevent the disclosure of information relating to him on grounds the information is false or invades his privacy interests," id. ¶ 219(g);

(6) barring the "execution of affidavits of support against class members pending the contesting of the findings against them," id. ¶ 219(h);

(7) requiring the government to "specifically define the conduct that they label 'battery,' 'extreme cruelty,' and "'overall pattern of violence,'" id. ¶ 219(i);

(8) requiring that the "VAWA self-petitioning process be removed from the Vermont USCIS center and de-centralized into the USCIS district offices," id. ¶ 219 (j); and

(9) requiring that all "advocacy groups that participate in the VAWA process take affirmative action to expand their client base to include a nearly equal number of foreign men married to U.S. citizen females or have their federal funding stopped," id. ¶ 219(k).

Finally, plaintiffs request nominal damages "as vindication for the violation of [their] rights."  Cmplt ¶ 219(d).

## ARGUMENT

### POINT I
### THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

### A.    Standards Governing Motions to Dismiss Under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Luckett v.

Bure, 290 F.3d 493, 496 (2d Cir. 2002) (quoting Makarova v. United States, 201 F.3d 110, 113

(2d Cir. 2000)).  "The requirement that jurisdiction be established as a threshold matter 'spring[s]

from the nature and limits of the judicial power of the United States' and is 'inflexible and

without exception.'"  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) (quoting

Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884)).  Because the issue of the

Court's jurisdiction is "the first and fundamental question," id. at 94, a motion contesting

jurisdiction must be considered before all other challenges.  See Bell v. Hood, 327 U.S. 678, 682

(1946).  The plaintiff bears the burden of establishing subject matter jurisdiction by a

preponderance of the evidence.  See Makarova, 201 F.3d at 113 (citing Malik v. Meissner, 82

F.3d 560, 562 (2d Cir. 1996)).

**B.      The Court Should Dismiss the Complaint for Lack of Subject Matter Jurisdiction
         Because None of the Named Plaintiffs Can Establish Standing**

      **1.      The Doctrine of Standing and Injury**

Article III of the United States Constitution limits the jurisdiction of the federal courts to

actual "cases" or "controversies."  U.S. Const. Art. III, § 2; see also Valley Forge Christian

College v. Americans United for Separation of Church and State, 454 U.S. 464, 471 (1982).

This limitation on the federal judicial power requires, inter alia, that a litigant have "standing"

before he may invoke a court's power.  "In essence, the question of standing is whether the

litigant is entitled to have the court decide the merits of the dispute or of particular issues."

Warth v. Seldin, 422 U.S. 490, 498 (1975).  Thus, the doctrine of standing focuses a court's

attention on the party seeking to invoke the court's jurisdiction, and not the underlying issues

that the party seeks to raise on the merits.  United States v. Richardson, 418 U.S. 166, 174 (1974)

(citing Flast v. Cohen, 392 U.S. 83, 99 (1968)).  If a litigant "lacks standing" to assert a claim,

then a court "lacks subject matter jurisdiction to entertain a request for such relief." Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004) (citing Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990)).  Moreover, the court "is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." Whitmore, 495 U.S. at 155-56 .

The Supreme Court has established three "irreducible constitutional" elements of standing.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  First, the plaintiff must have suffered a concrete and particularized "injury in fact"; that is, an injury that is actual or imminent, not conjectural or hypothetical.  See id. (internal citations and quotation marks omitted).  Second, the plaintiff's injury must be fairly traceable to the defendant's action, not caused by some third party not before the court.  See id. (citation and quotation marks omitted).  Third, it must be likely – not merely speculative – that the injury will be redressed by a favorable decision.  See id. at 561 (citation and quotations marks omitted).

"The injury requirement is viewed as advancing the values underlying the standing and justiciability doctrines.  Requiring an injury is a key to assuring that there is an actual dispute between the adverse litigants and that the court is not being asked for an advisory opinion."  Erwin Chemerinsky, Federal Jurisdiction § 2.3.2, at 52-53 (1989).   In order for an injury to suffice for standing purposes, it must be an "injury in fact," United States v. SCRAP, 412 U.S. 669, 686 (1973), which requires a litigant to establish he has "sustained or is immediately in danger of sustaining some direct injury . . . that must be both 'real and immediate,'" City of Los Angeles v. Lyons, 461 U.S. 95 (1983).  See also Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 100 (1979) (injury must be "distinct and palpable"); see generally Warth, 422 U.S. at 499 ("judicial power exists only to redress or otherwise protect against injury to the complaining party").  In contrast, an injury which is hypothetical in nature, or is abstract and based on

-15-

"speculation and conjecture," Rizzo v. Goode, 423 U.S. 362, 372 (1976), is insufficient to support a finding that a litigant has the necessary "personal stake in the outcome of the controversy." Baker v. Carr, 369 U.S. 186, 204 (1962); Shain, 356 F.3d at 215 ("abstract injury is not enough" to confer standing; "rather, [t]he injury or threat of injury must be both real and immediate not conjectural or hypothetical") (internal marks omitted).

Moreover, while past injury creates standing to seek damages, a litigant seeking declaratory or injunctive relief "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." Deshawn E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 105-06 (1983)); see also Lujan, 504 U.S. at 564 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . .") (quotations omitted). Although the requirements for standing to seek declaratory relief are not as strict as those for injunctive relief, see Levin v. Harleston, 966 F.2d 85, 90 (2d Cir. 1992), plaintiffs seeking a declaratory judgment are not released from the requirement that they demonstrate a live controversy. See Golden v. Zwickler, 394 U.S. 103, 110 (1969) (no federal court has "jurisdiction to pronounce any statute, either or a State or of the United States, void, because irreconcilable with the Constitution, except as it is called upon to adjudicate the legal rights of litigants in actual controversies"). Such relief is not appropriate unless "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy to warrant the issuance of a declaratory judgment.'" Id. at 108 (quoting Md. Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

### 2. Plaintiffs Have Not Demonstrated Any Injury-in-Fact

Plaintiffs' complaint should be dismissed, first and foremost, because they have not

established the requisite injury-in-fact.  See Lujan, 504 U.S. at 560.  Rather, their entire

complaint rests on abstractions and speculation about harms that may never occur, and thus fails

to present a justiciable case or controversy.  See id. at 564; Valley Forge , 454 U.S at 473.

Primarily, none of the named plaintiffs can confirm that his ex-wife actually filed any application

under VAWA.  Indeed, each plaintiff freely admits that his contention regarding his ex-wife's

use of the VAWA procedures is based purely on conjecture.  See Cmplt ¶¶ 84, 95,110, 125

(stating, "upon information and belief," that each named plaintiff's ex-wife is using or "must

have used" the VAWA process).  Any harm that plaintiffs fear as a result of the allegations their

ex-wives may have made before DHS are thus entirely speculative, and their stake in this

supposed controversy is dubious.  See Lujan, 504 U.S. at 560 (alleged injury must be "concrete

and particularized," and not "conjectural or hypothetical"); Rizzo, 423 U.S. at 372.

        That plaintiffs' inability to learn whether their ex-wives filed any applications might be

attributable to the statutory confidentiality requirements, see 8 U.S.C. § 1367(a)(2), does not alter

this analysis.  Even assuming that plaintiffs' ex-wives did, in fact, file such applications,

plaintiffs can point to no element of the VAWA statutory scheme that effects any actual

detriment upon them.  Although they repeatedly contend in their complaint that they may have

been, or will be, "adjudged responsible" or found "guilty" of battery and cruelty against their ex-

wives, see, e.g., Cmplt ¶ ¶ 145-46, they nowhere allege that they have been subjected to any

criminal or civil penalties.  Indeed, their terminology is inaccurate; none of the VAWA

provisions at issue provide for any criminal or civil proceedings to be instituted against them,

and none of the plaintiffs alleges that any proceedings have been instituted against him as a result

of any VAWA application. Simply put, plaintiffs fail to allege that they have, to date, suffered

any direct, concrete consequence of any VAWA procedure.

Plaintiffs claim that there is an "ever present threat" that the records of their ex-wives' immigration proceedings "will be used in a manner injurious to a class member's reputation," Cmplt ¶ 23, and that "[a]nticipation of this future harm is in itself a present and continuing harm," id. ¶ 24; this latter contention is simply wrong.  Subjective fear simply does not equate to a threat of specific future harm.  See Laird v. Tatum, 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"); National Council of La Raza v. Gonzales, 468 F. Supp. 2d 429, 441 (E.D.N.Y. 2007) (no standing based "solely upon fear").  Rather, a litigant must demonstrate that the risk of future harm is imminent, and plaintiffs have not done so here.  See id.; Simmonds v. INS, 326 F.3d 351, 360 (2d Cir. 2003) (finding no present controversy made on the "mere possibility of future injury, unless it is the cause of some present detriment").

The supposed risk is based solely on the fact that 8 U.S.C. § 1367(b)(2), (4), (5) and (7) permit information regarding VAWA proceedings to be "disclosed to alien wives, law enforcement officials, and private feminist organization and Federal, State, and local public agencies that provide benefits to alien wives" who claim to have been abused, Cmplt ¶ 151; plaintiffs thus claim that "[c]itizen husbands cannot prevent any privacy information or false statements about them from being disclosed to the above persons or prevent them from in turn making the information public," id. ¶ 152.  However, none of the plaintiffs alleges that any of these parties has publicized, or threatened to publicize his ex-wife's own records.  More fundamentally, 8 U.S.C. § 1367(b) does not specify any circumstances under which such records must be released, and thus plaintiffs cannot point to any facts suggesting the risk of disclosure is "imminent."  See Laird, 408 U.S. at 14; La Raza, 468 F. Supp. 2d at 441-42 (no standing where plaintiffs whose names were entered into a criminal database pointed to no circumstances

-18-

suggesting they would be targeted for arrest as result); cf. Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir. 1994) (finding that plaintiff had demonstrating live controversy where New York statute required disclosure of records naming individuals accused of child abuse to potential employers). A complaint based solely on speculation about how information gathered by a government agency might be used in the future simply "cannot form the foundation for federal jurisdiction." See New Alliance Party v. FBI, 858 F. Supp. 425, 432 (S.D.N.Y. 1994) (CBM) (finding that members of political party had no standing to challenge FBI's investigation of their activities on First Amendment grounds where their asserted injury was based "solely on hypothetical speculation about how the information gathered by the FBI might be used against the party in the future"). Plaintiffs' asserted fear thus rests on too many levels of speculation, and fails to demonstrate the requisite injury-in-fact. See id. at 431-32; Lyons, 461 U.S. at 111.

Moreover, plaintiffs cannot circumvent the injury-in-fact requirement by claiming to represent a class; it is plain that none has established the requisite injury regardless of how they style their complaint. See O'Shea v. Littleton, 414 U.S. 488, 494 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.") (citations omitted); see also Doe v. Blum, 729 F.2d 186, 190 n.4 (2d Cir. 1984) (satisfaction of standing's injury requirement must be determined with respect to named plaintiffs).

### 3. Any Alleged Injury Is Not Traceable to Any Conduct by Defendants

To the extent plaintiffs assert any concrete injuries in their complaint, these injuries nonetheless fail to confer standing because they are not fairly traceable to any conduct by defendants. Cf. Warth, 422 U.S. at 506-07. For example, each plaintiff alleges that he was arrested and/or had a temporary order of protection entered against him, based on false charges

of assault.  See Cmplt ¶¶ 67-69, 89, 104-05, 120.  Cardozo alleges that his wife obtained a restraining order that lasted four years, and that he was denied a job after this order was detected in the course of a background check.  Cmplt ¶ 108.  Plaintiffs do not suggest, however, that the arrests were made or the protective orders entered based on information obtained from their ex-wives' VAWA records.  Moreover, they fail to illustrate how any VAWA statutory provision interferes with their ability to contest their ex-wives' submissions in an independent state or family court proceeding.  Any risk to their reputations would result from the protective order itself, and not from any allegations regarding the underlying abuse that their ex-wives may have made to a DHS adjudicator in a separate proceeding.  Likewise, while plaintiffs point to the expenses they have incurred in "legal fees," see Cmplt ¶¶ 111, 123, they nowhere suggest that these fees relate to any VAWA application, as opposed to their divorce proceedings or other matters relating to their ex-wives.  Because they have not shown any causal link between their ex-wives' supposed immigration applications and the alleged harm, plaintiffs cannot establish that any injury they experienced is traceable to defendants' conduct – much less redressable.  See Whitmore, 495 U.S. at 155; New Alliance Party, 858 F. Supp. at 433 (plaintiffs failed to establish traceability were "any stigmatization [they] suffer[ed] could be traced to . . . statements and publications made by private individuals and organizations, many of which preceded the FBI investigation" to which plaintiffs attempted to attribute harm).

**POINT II**
**THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

**A.  Standards Governing Motions to Dismiss Under Rule 12(b)**

For largely the same reasons that plaintiffs cannot establish standing, they cannot state a

viable claim for relief, even assuming the truth of the allegations in the complaint.[7] Dismissal

under Rule 12(b)(6) is appropriate if a plaintiff fails to state a claim upon which relief can be

granted.  See Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss pursuant to Rule 12(b)(6), the

Court accepts the factual allegations in the complaint as true and draws all reasonable inferences

in favor of the plaintiff.  See Walker v. City of New York, 974 F.2d 293, 298 (2d Cir. 1992);

Frazier v. Coughlin, 850 F.2d 129, 129 (2d Cir. 1988).  However, although a complaint need not

set forth detailed factual allegations, a plaintiff's obligation to provide the grounds for his

entitlement to relief requires more than labels and conclusions, and the formulaic recitation of

the elements of a cause of action.  Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955,

1964-65 & n.3 (2007).  Thus, to survive a motion to dismiss under Rule 12(b)(6), a complaint's

factual allegations must be enough to render a plaintiff's entitlement to relief plausible, rather

than speculative, on the assumption that the facts alleged are true even if doubtful.  See id. at

1965 ("Factual allegations must be enough to raise the right to relief above the speculative

level"); see also id. at 1966-69 (overruling the former "no set of facts" standard for 12(b)(6)

motions and requiring factual allegations justifying plausible basis for entitlement to relief).

The Second Circuit has interpreted Twombly to require a "flexible 'plausibility standard,'

which obliges a pleader to amplify a claim with some factual allegations in those contexts where

such amplification is needed to render the claim plausible."  Iqbal v. Hasty, 490 F.3d 143, 157-

58 (2d Cir. 2007) (emphasis in original).  Thus, "a complaint must allege facts that are not

merely consistent with the conclusion that the defendant violated the law, but which actively and

plausibly suggest that conclusion."  Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507

_____

[7] If the Court determines that plaintiffs lack standing, it need not reach the Government's
argument that plaintiffs' complaint also fails to state a claim under Rule 12(b)(6).

F.3d 117, 121 (2d Cir. 2007).

Although courts must accept all factual allegations in the complaint as true, see Frazier, 850 F.2d at 129 (2d Cir. 1996), this requirement extends only to well-pleaded factual allegations in a complaint, not to bald conclusory statements. Goldfine v. Sichenzia, 118 F. Supp. 2d 392, 396-97 (S.D.N.Y. 2000). In addition, legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness. L'Europeenne de Banque v. La Republica de Venezuela, 700 F. Supp. 114, 122 (S.D.N.Y. 1988).

**B.    Plaintiffs Fail to State Any Viable Claim for Relief**

It is plain from the face of plaintiffs' complaint that none of their claims for relief is viable. In order to demonstrate a due process violation under the Fifth Amendment – including an equal protection violation – a plaintiff must first demonstrate that he has a property or liberty interest at stake. See Board of Regents v. Roth, 408 U.S. 564, 570-71 (1972); Valmonte, 18 F.3d at 999. While plaintiffs appear to claim that the threat to their reputations constitutes the deprivation of a liberty interest, the Supreme Court has made clear that "loss of reputation must be coupled with some other tangible element in order to rise to the level of a protectable liberty interest." Valmonte, 18 F.3d at 999 (citing Paul v. Davis, 424 U.S 693, 701 (1976)). Here, where plaintiffs fail to allege any facts suggesting that the government's maintenance of records gives rise to any specific risk of disclosure, they cannot meet this standard. See Levine v. Morgenthau, No. 95-cv-8529 (PKL), 1996 WL 396119, at *5-6 (S.D.N.Y. July 16, 1996). Likewise, where they have not pointed to any action that could reasonably interpreted as either an explicit or implicit threat of prosecution for any "speech" or other conduct on their part, they have not stated a First Amendment Claim. See Rattner v. Netburn, 930 F.2d 204, 208 (2d Cir. 1991). Finally, they cannot state an equal protection claim where the statutory provisions are

-22-

gender-neutral on their face, and apply to aliens abused by LPR aliens as well as U.S. citizens.

Moreover, the claim based on national origin is even more dubious in the context of proceedings

where only the alien is applying for a benefit, and the statutes provide neither a benefit nor a

detriment for the spouse.  See Jankowski-Burczyk v. INS, 291 F.3d 172, 176-78 (2d Cir. 2002)

(it is well established that "'the government can treat people differently if they are not similarly

situated'") (citing Able v. United States, 155 F.3d 628, 631 (2d Cir. 1998).  Plaintiffs thus fail to

articulate any plausible claim for relief.  See Twombly, 127 S. Ct. at 1964-65.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' complaint with prejudice.

Dated: New York, New York
      July 29, 2008

                         Respectfully submitted,

                         MICHAEL J. GARCIA
                         United States Attorney for the
                         Southern District of New York
                         Attorney for Defendants

By:    /s/ _____
        NATASHA OELTJEN
        Assistant United States Attorney
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Tel.: (212) 637-2769
        Fax: (212) 637-2786
        Email: natalia.oeltjen@usdoj.gov