UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

ROY DEN HOLLANDER; SEAN MOFFETT; BRUCE
CARDOZO; DAVID BRANNON,

                     Plaintiffs,

                v.

Secretary MICHAEL CHERTOFF, U.S. Department of
Homeland Security; Director EMILIO GONZALEZ,
U.S. Citizenship and Immigration Services (formerly
Immigration and Naturalization Service); U.S. Attorney
General MICHAEL MUKASEY; Director KEVIN
OHLSON, Executive Office of Immigration Review,
U.S. Department of Justice,

                 Defendants.

-------------------------------------------------------------------x

:    ECF Case

:    No. 08 Civ. 1521 (WHP)

## REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York  10007
Tel.: (212) 637-2769
Fax:  (212) 637-2686

NATASHA OELTJEN
Assistant United States Attorney
    – Of Counsel –

Defendants Michael Chertoff, Secretary of the United States Department of Homeland Security ("DHS"), Emilio Gonzales, director of the United States Citizenship and Immigration Services (CIS"), Michael B. Mukasey, Attorney General of the United States, and Kevin Ohlson, Director of the Executive Office for Immigration Review ("EOIR") (collectively, "Defendants," or "Government"), by their attorney Michael J. Garcia, United States Attorney for the Southern District of New York, respectfully submit this reply memorandum of law in further support of their motion to dismiss the complaint of plaintiffs Roy Den Hollander, Sean Moffett, Bruce Cardozo, and David Brannon (collectively, "Plaintiffs") under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs – four men who purport to represent a class of U.S. citizen males currently or formerly married to non-citizen wives, and who claim to have suffered, or to be at risk of suffering, a number of constitutional violations as a result of their wives' alleged applications for immigration benefits under the Violence Against Women Act ("VAWA") – fail to demonstrate an actual case or controversy in their complaint. As set forth more fully in the defendants' moving brief, the allegations in their complaint are insufficient to establish any injury-in-fact, much less an injury fairly traceable to any action by the defendants, and accordingly, plaintiffs lack standing to bring this action. In their brief in opposition to the motion, plaintiffs insist that they have suffered, or are "highly likely" to suffer harm to their liberty and privacy interests. As in their complaint, however, these contentions are insufficient to demonstrate a threat of sufficient specificity or immediacy, sufficient to warrant judicial intervention. Rather, most of their contentions regarding the harm they might face only emphasize the speculative nature of that harm, and thus reinforce that any pronouncement from this Court on the constitutionality of

the VAWA provisions would amount to no more than an advisory opinion.  Accordingly, the

complaint should be dismissed for lack of subject matter jurisdiction.

<u>ARGUMENT</u>

I.    <u>Plaintiffs' Allegations Regarding Due Process and First Amendment Violations Are Too
      Speculative to Establish Injury-in-Fact</u>

As in their complaint, plaintiffs fail to establish that the injuries they supposedly face are

sufficiently "real and immediate."  <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983); <u>see</u>

<u>also</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992) (injury must be actual or

imminent, not conjectural or hypothetical).  The thrust of plaintiffs' memorandum in opposition

appears to be that their allegations of "harm" are sufficient to establish standing because injury

may, in some cases, be established by a showing of threat of harm. While this principle may

apply in some limited situations, <u>see</u>, <u>e.g.</u>, <u>Baur v. Veneman</u>, 352 F.3d 625, 634 (2d Cir. 2003)

(finding that threat resulting from "exposure to harmful products" could suffice in the "specific

context of food and drug safety suits"), this Court and others have discouraged any expansion.

<u>Id.</u> at 636, <u>National Council of La Raza v. Gonzales</u>, 468 F. Supp. 2d 429, 438 (E.D.N.Y. 2007).

Indeed, "'were all purely speculative 'increased risks' deemed injurious, the entire requirement

of 'actual injury' would be rendered moot, because all hypothesized, non-imminent 'injuries'

could be exalted as 'increased risk of future injury.'" <u>La Raza</u>, 468 F. Supp. 2d at 438 (quoting

<u>Center for Law and Educ. v. Dep't of Educ.</u>, 396 F.3d 1152, 1161 (D.C. Cir. 2005)).

Accordingly, the threatened harm must be truly imminent, and "clearly identifiable."  <u>Id.</u> at 440.

Here, plaintiffs claim that the defendants' enforcement of the VAWA provisions "creates

a certainty of future injuries to [U.S. citizen husbands]" and that "[a]t this very moment, . . . at

least two of the named plaintiffs are having their rights violated by the defendants."[1] Plaintiffs'

Memorandum of Law in Opposition to the Defendants' Motion to Dismiss the Amended

Complaint ("Opp.") at 8. They do not, however, elaborate on the immediacy of these alleged

violations, and this deficiency is fatal to their claims. Plaintiffs vaguely contend that the "basic

interest in notice and opportunity to be heard supports standing," Opp. at 12 – yet fail to specify

the deprivation giving rise to this opportunity. Contrary to their contention, it is well established

that the general interest to "organized society that procedural due process be observed,"id., is

insufficient, in itself, to confer standing on an individual or class. See Valley Forge, 454 U.S. at

482 ("the Art. III requirements of standing are not satisfied by the abstract injury in

nonobservance of the Constitution asserted by . . . citizens") (internal citations omitted). Indeed,

many of the contentions in plaintiffs' opposition – as in their complaint – rest on a premise

which is plainly false: that VAWA proceedings are adversarial. VAWA proceedings are civil

proceedings designed for the exclusive purpose of determining whether to afford an alien legal

status in the United States. The alien's spouse is not a party to these proceedings, nor do the

VAWA statutes impose any legal disability against the spouse.

Plaintiffs likewise fail to establish any immediate connection between their ex-wives'

alleged VAWA proceedings and any separate criminal or civil proceedings involving plaintiffs

personally. At most, they claim that the "VAWA secrecy" provisions in 8 U.S.C. § 1367 prevent

---

[1] In response to defendants' statement in their moving brief that none of plaintiffs could confirm that his ex-wife filed any application under VAWA, one of the named plaintiffs, Bruce Cardozo, attaches an affidavit to plaintiffs' memorandum, in which he states that his wife did, in fact, file an application for lawful permanent resident ("LPR") status under the VAWA. Opp. at 12; see also Plaintiffs' Ex. 2, Affidavit of Bruce Cardozo, ¶ 2. This allegation does little to address the fundamental deficiency in plaintiffs' claims, which is the failure to illustrate a causal connection between the filing of a VAWA application and a concrete injury to any named plaintiff.

them from "using Federal records to reopen state criminal and civil cases or defend against current actions by showing that accusations by [their ex-wives] lack credibility." Opp. at 12. Again, however, none of the named plaintiffs has asserted that he is currently defending against any criminal or civil action, or that a past effort to reopen a case has failed. Plaintiffs thus fail to establish any personal deprivation of liberty inherent in the VAWA proceedings.

Plaintiffs' contention that they have established injury in the form of harm to reputation is equally unavailing. It is true, as plaintiffs note, that in some situations, "[g]overnment harm to reputation in connection with the denial of a right . . . infringes a liberty interest triggers due process." Opp. at 10 (citing Neu v. Corcoran, 869 F.2d 662, 669-70 & n.2 (2d Cir. 1989)); see also Valmonte v. Bane, 18 F.2d 992, 999 (2d Cir. 1994) ("loss of reputation must be coupled with some other tangible element in order to rise to the level of a protectible property interest"). In no way does this principle abrogate the requirement that plaintiffs show actual or imminent injury, however. See Valmonte, 18 F.2d at 999 (injury must be sufficiently "real and immediate"). Thus, plaintiffs' attempt to equate their own situation to that of the plaintiff in Valmonte is unavailing. See Opp. at 14. In that case, the plaintiff challenged a law that required a state agency to keep a Central Register of names of individuals who had been the subject of complaints of child abuse; while such records were generally kept confidential, the law required, in cases where an individual on the list applied for any child-care related position, that the record be disclosed to that employer. Id. at 995-96. The statute further provided that such an employer could only then hire that individual if it maintained a record of the specific reasons it found her "appropriate" for working in the child care field. Id. at 996. The Second Circuit found that a present controversy existed because the plaintiff alleged that she "would look for a position in the child care field but for her presence on the Central Register," in that if she applied, her

-4-

potential employer would "by operation of law <u>automatically</u> find out that she is named on the Central Register," and likely not hire her for that reason.  <u>Id.</u> at 999 (emphasis added).

      Here, plaintiffs cannot claim that their situation is parallel to that of the plaintiff in <u>Valmonte</u> because there is no provision in the INA or VAWA that places any affirmative disclosure requirements on the federal government.  Plaintiffs nonetheless argue that they face a similar threat, because those class members "applying for employment with the Federal Government that requires a security clearance will have their VAWA records checked by the FBI, which will result in a denial."  Opp at 14. This analogy is unavailing because it rests on multiple levels of speculation.  <u>Cf.</u> <u>La Raza</u>, 468 F. Supp. 2d at 442 (allegations regarding threat are insufficient to confer standing when they rest on nothing more than a "chain of contingencies").  None of the plaintiffs has alleged that he has applied for a job with the federal government, much less that such application has been denied.  Nor does any of them allege that he plans to apply for a particular job, requiring him to hold a particular security clearance, for which he would have applied but for the VAWA provisions. Moreover, they do not point to any provision in the VAWA – nor <u>any</u> statute or regulation, for that matter – mandating disclosure of immigration records kept under their spouses' names. Therefore, their situation is a far cry from that of the plaintiff in <u>Valmonte</u>, and that case does nothing to advance their claims.

      Finally, as to the alleged threat that the VAWA presents to an "American man's right to marry an alien female," Opp. at 13, none of the named plaintiffs has demonstrated that this threat affects him personally. None was prevented from marrying an alien female in the past, and none has alleged that he has any specific plans to marry in the future that have been thwarted.  Equally baseless is their claim of injury resulting from 8 U.S.C. § 1184(d)(2), a relatively new VAWA provision regarding fiancé visas, which limits the number of aliens an individual citizen can

sponsor for such visas to two, unless he or she obtains a wavier. Plaintiffs complain generally that "those who are unlucky in marriage to aliens are effectively limited to two [fiancé] visas," Opp. at 13, yet none alleges that he has tried to file a visa petition for a third alien fiancée, much less that such petition has been denied. Accordingly, as explained in defendants' opening papers, plaintiffs simply have not demonstrated that they have suffered any direct, concrete consequence as the result of any VAWA provision, and therefore, they lack standing to bring this action.

II.    Plaintiffs Cannot Show That They Personally Suffered Any Equal Protection Injury

    A.    Denial of Equal Protection Based on Alienage Is Not Implicated

Because plaintiffs cannot demonstrate the deprivation of any liberty or property interest, they also have not shown injury for purposes of their equal protection claim under the Fifth Amendment. Cf. Bolling v. Sharpe, 347 U.S. 497, 499 (1954) (Due Process Clause of the Fifth Amendment implicitly includes equal protection guarantee of the Fourteenth Amendment). Accordingly, their contentions regarding the VAWA's different treatment of aliens and citizens – see, e.g., Opp at 16 ("The aliens know about the proceedings and can submit evidence – the citizens are shutout [sic]") – are misplaced. As noted in defendants' initial memorandum, it is well established that "'the government can treat persons differently if they are not 'similarly situated.'" Jankowski-Burczyk v. INS, 291 F.3d 172, 177 (2d Cir. 2002) (quoting Able v. United States, 155 F.3d 628, 631 (2d Cir. 1998)). In their opposition, plaintiffs mischaracterize this statement as a contention that "the Government can deprive citizens of fundamental rights while giving those same rights to non-permanent aliens because citizens are not similarly situated with aliens." Opp at 17. To the contrary, Jankowski-Burczyk makes clear that a court

-6-

must first determine whether two groups are similarly situated before addressing whether treating those groups differently implicates equal protection. 291 F.3d at 176-77.

Here, aliens and citizens are not similarly situated in the context of removal proceedings. As stated in Section I, supra, an alien's deportation proceedings do not pose any immediate threat of deprivation on that alien's U.S. citizen ex-spouse, who is not a party – and who evidently has no objection to the alien's deportation. Only aliens face the threat of deportation, and thus receive procedural protection in the form of a hearing where they can contest removability. U.S. citizens face no comparable threat, and certainly have no enforceable interest in ensuring the deportation of another. Cf. Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution"). Citizens do not receive the same procedural protections as aliens in this particular situation because, simply, they have no need for them.

Moreover, as noted in defendants' opening memorandum, the VAWA statutes on their face foreclose the claim of any animus toward citizens, because they allow aliens to file VAWA applications whether their spouses are U.S. citizens or LPRs. Plaintiffs ignore the significance of this reality in their opposition, stating dismissively that "[t]his case does not involve marriages between full permanent residents and other aliens." Opp. at 1 (emphasis in original). Regardless of which parties are involved in this lawsuit, the statutes provide the same benefits to aliens regardless of whether their spouses are LPR aliens or U.S. citizens.

B.    Denial of Equal Protection Based on Gender Is Not Implicated

As for plaintiffs' contention that the challenged VAWA provisions are, while gender-neutral on their face, "applied disproportionately against men," Opp at 17-19, plaintiffs are

simply not the appropriate parties to bring such a claim.  Even assuming the truth of this

contention – i.e., that a disproportionate number of women file, and ultimately succeed on,

VAWA petitions – that fact would have no bearing on plaintiffs.  As stated above, plaintiffs are

U.S. citizens who have no need to avail themselves of the VAWA procedures.  While a similar

equal protection challenge might plausibly be brought by an alien male in response to the denial

of his own VAWA petition, that situation is outside the scope of this lawsuit.

CONCLUSION

For the foregoing reasons and the reasons stated in defendants' opening papers,

defendants respectfully request the Court grant their motion and dismiss the complaint.

Dated:  New York, New York
        September 5, 2008

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By:    /s/ Natasha Oeltjen
       NATASHA OELTJEN
       Assistant United States Attorney
       Tel.: (212) 637-2769
       Fax:  (212) 637-2686

-8-